THOMAS J. PRINDIVILLE

*v.*

JOHNSON & HIGGINS, à corporation.

[Decided March 6th, 1922.]

One who has accepted dividends and salary from a corporation with full knowledge that its articles of incorporation contain fundamental provisions that are in violation of the laws of the state will be denied equitable relief against such illegal provisions, since he does not come into court with clean hands.

---

On appeal from a decree in chancery advised by Vice-Chancellor Backes, and reported in *92 N. J. Eq. 515.*

*Mr. Robert H. McCarter* and *Mr. Henry Wollman* (of the New York bar). On the brief, *Mr. Royall Victor* and *Mr. Eustace Seligman* (also of the New York bar), for the appellant.

*Mr. John R. Hardin.* On the brief, *Mr. F. W. M. Cutcheon, Adrian H. Larkin* and *Hersey Egginton* (of the New York bar), for the respondent.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

The bill in this case was filed by the appellant, Prindiville, a stockholder in the Johnson & Higgins Company, to compel it to pay him certain dividends upon his holdings of capital stock, notwithstanding the fact that such payment is prohibited by the charter of the company, and to restrain the payment of what he claims to be excessive salaries to the officers of the corporation.

The facts involved in the litigation are fully set forth in the opinion promulgated by the learned vice-chancellor, and it is not necessary to restate them in detail. Briefly, the case attempted to be established by the appellant was this: Johnson & Higgins, a copartnership, was, in 1899, carrying on a very lucrative insurance business in the city of New York, and also in many of the principal cities of the United States. In that year the members of this copartnership, for the purpose of escaping the personal liability of partners, and getting the protection and advantages conferred on corporations and the owners thereof by the laws of New Jersey, concluded to, and did, incorporate under those laws, using the name of Johnson & Higgins as the name of the corporation. In order to retain the benefits of the partnership, and at the same time escape liability as partners, they inserted in their articles of incorporation provisions which were not only in violation of our Corporation act, but were also contrary to the laws of this state, for the reason that they were in illegal restraint of trade, and were prohibited by its public policy. In 1911 Prindiville became a stockholder in this corporation, organized, as he now asserts, in violation of our laws, with a full knowledge of the terms of the charter contract under which his stock was issued, and which, as he now asserts, constitute the violations of law above referred to. Immediately thereafter he was elected one of the officers of the corporation, and continued as such officer until

1919, when he left the service of the corporation, largely because of the fact that he was dissatisfied with the amount of his salary, which was less than was being paid to certain other of the officers of the company. During the period of his service he received from time to time, as salary and as dividends on his stock, various sums of money, amounting in the aggregate to between $450,000 and $500,000, as his share of the proceeds of what he now claims was a scheme to violate the laws of the state.

The learned vice-chancellor, before whom the case was heard, after a consideration of the merits, concluded that the charges made by the complainant were not justified in fact or in law, and that the corporate scheme which he now attacks was a valid exercise of the powers conferred upon corporations by our statute, and, as a result of this conclusion, a decree was entered dismissing the bill.

We are unwilling to consider the meritorious questions decided by the vice-chancellor. The complainant, according to the averments of his bill and the undisputed facts set out in the answer and developed by the proofs, came into the court of chancery for the purpose of having it there declared that a scheme, in the execution of which he was an active participant and the recipient of very large sums of money, was a fraud upon our statute, a violation of our public policy, and, therefore, null and void, and sought to have an adjudication in his favor, based upon these facts, in order that he may now enjoy benefits which can only come to him as a result of such an adjudication. Stated, shortly, his position is this: Having for some eight years participated in the carrying out of this fraudulent scheme and reaped the benefits thereof, he now seeks, either for his own personal benefit or as the self-constituted representative of the state, to have this fraudulent scheme ended and our state laws and policies vindicated.

So far as the vindication of our laws and policies is concerned, it is enough to say that the state does not need his aid for any such purpose, and that his assumed status as a representative of the state cannot be recognized.

If we consider him as a mere individual, seeking to repudiate for his own personal advantage a fraud upon the state in which he was so long a participant, it is entirely settled that the court of chancery is not open to him for any such purpose. It is a maxim of equity that a court of conscience will not even listen to a suitor who comes into that tribunal with unclean hands, and this doctrine is applicable whenever it appears that the litigant seeks to be relieved of the consequences of a fraud in which he has been an active participant. The courts of this state have steadfastly refused to lend their aid to a wrong-doer either by the enforcement of an illegal contract or by relieving the wrong-doer from the obligations thereof; and this they do, not out of regard for the defendant in the action, but because of their unwillingness to use the powers which were granted to them for the furtherance of lawful ends in aiding schemes which are in their nature venal, or for the purpose of relieving parties from the liabilities which such schemes create. *Watson* v. *Murray, 23 N. J. Eq. 257; Todd* v. *Rafferly, 30 N. J. Eq. 260; Minzesheimer* v. *Doolittle, 60 N. J. Eq. 394; Gregory* ads. *Wilson, 36 N. J. Law 315; Hope* v. *Linden Park Association, 58 N. J. Law 627; Wyckoff* v. *Weaver, 66 N. J. Law 648.*

For the reasons stated, the decree dismissing the bill will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, ACKERSON, VAN BUSKIRK—15.

*For reversal*—None.