540 P.2d 361 (1975)
In the Matter of the ESTATE of Carrie RIGGS, a/k/a Carrie B. Riggs, a/k/a Carrie Lumpp Riggs, Deceased. John H. RIGGS, Executor-Appellant,
v.
MIDWEST STEEL AND IRON WORKS CO., Defendant-Appellee.
No. 75-048.
Colorado Court of Appeals, Div. I.
July 22, 1975.
*362 Alperstein, Plaut & Barnes, P. C., Arnold Alperstein, Susan G. Barnes, Lakewood, for executor-appellant.
Fairfield & Woods, James L. Stone, Charles J. Beise, Denver, for defendant-appellee.
Selected for Official Publication.
COYTE, Judge.
This appeal arises from an estate proceeding to compel the Board of Directors of a closely held corporation to transfer 400 shares of its stock to the beneficiary under the last will and testament of a deceased stockholder.
Carrie Riggs was the daughter of Herman Lumpp, one of the founders of defendant Midwest Steel and Iron Works Co. He held 500 shares of stock in the company, which upon his death were bequeathed, 300 to his wife and 100 to each of his two children. When the wife died, she bequeathed her shares to her daughter Carrie Riggs. Thus, Carrie Riggs at her death owned a total of 400 shares. The two stock certificates, one for 300 shares and one for 100 shares issued in the name of Carrie Riggs, were imprinted with a restrictive endorsement:
"Transfer of this stock certificate is subject to an agreement with the Company to first submit same to officers of the Company with privilege of purchase."
The stock certificate representing 300 shares had an additional restrictive endorsement:
"Upon termination of employment with the Company the purchaser of this stock certificate agrees to offer same to the Company at the book value determined by the last annual audit."
Carrie Riggs' father, her predecessor in interest, executed an agreement with the company with respect to all of the shares:
"In acepting Certificate No. ___ in the amount of shares of capital stock of the Midwest Steel & Iron Works Co., I agree that in case I desire to dispose of the above-mentioned stock I will give the officers and stockholders of the Company the first option to buy said stock on a bona fide offer."
However, neither the wife nor Carrie Riggs signed such an agreement with the company. In her last will and testament Carrie Riggs devised and bequeathed the residue of her estate, which included the stock, to her son, appellant John H. Riggs, who was also the executor of the estate.
He petitioned the district court for an order of partial distribution of the assets of the estate including the 400 shares of stock. Upon receipt of the order authorizing distribution of the stock to John H. Riggs, Midwest refused to transfer the stock and claimed that it had an absolute right to acquire the stock. Appellant refused to sell the stock to Midwest.
After hearing on a motion to show cause why the stock should not be transferred, the court modified its order of partial distribution, *363 finding as a conclusion of law that the operative words of the agreement, "to dispose of" applied to the disposition of the stock under the will of Carrie Riggs and that the executor must first offer the stock to Midwest. We reverse and hold that Midwest must transfer the stock subject to the restrictions on the face of the stock certificates.
Only a few jurisdictions have decided the issue at hand. We reject the Massachusetts rule adopted by the court below that transfers of assets from the executor of an estate to the beneficiary are subject to the restrictions on alienability contained in those assets. See Colbert v. Hennessey, 351 Mass. 131, 217 N.E.2d 914; Boston Safe Deposit & Trust Co. v. North Attleborough Chapter of American Red Cross, 330 Mass. 114, 111 N.E.2d 447. We hereby adopt, as more logical, the majority rule that, unless otherwise provided therein, restrictions on alienability do not apply to testamentary disposition. See In re Estate of Martin, 15 Ariz.App. 569, 490 P.2d 14, 61 A.L.R.3d 1085; Stern v. Stern, 70 U.S. App.D.C. 340, 146 F.2d 870; Elson v. Security State Bank, 246 Iowa 601, 67 N.W.2d 525; Vogel v. Melish, 31 I11.2d 620, 203 N.E.2d 411; Globe Slicing Machine Co., Inc. v. Hasner, 333 F.2d 413 (2d Cir.), cert. denied, 379 U.S. 969, 85 S.Ct. 666, 13 L.Ed.2d 562; Storer v. Ripley, 12 Misc.2d 662, 178 N.Y.S.2d 7; Taylor's Administrator v. Taylor, 301 S.W.2d 579 (Ky.).
Stock restrictions of this type must be strictly construed. In re Estate of Martin, supra; see also Irwin v. West End Development Co., 342 F.Supp. 687 (D. Colo.); and Sterling Loan & Investment Co. v. Litel, 75 Colo. 34, 223 P. 753. The endorsement here does not restrict testamentary dispositions specifically. A strict and logical construction is that the restriction does not apply to such circumstances. As stated in Stern v. Stern, supra:
"The requirement that stock shall first be offered to the corporation and then to the stockholders before it is transferred obviously means that the stockholder must make these offers before he voluntarily transfers his stock, not that he must make them before he dies. The by-law does not apply to the situation which arises when, because of a stockholder's death, transmission or devolution of his shares is inevitable."
See also In re Estate of Martin, supra; and Vogel v. Melish, supra.
Immediately upon Carrie Riggs' death, title to her stock was transferred by operation of law to her personal representative, her son, the appellant. Stone v. Chapels for Meditation, Inc., 33 Colo.App. 346, 519 P.2d 1233. Additionally, by law the executor of the estate has no choice but to tender all the assets bequeathed to the various beneficiaries. Section 15-12-703, C.R.S. 1973. Were he not to do so, he would subject himself to suit by the beneficiaries. See In re Estate of Huling, 105 Colo. 475, 99 P.2d 194; In re Estate of Fehling, 34 Colo.App. 445, 528 P.2d 407. This is the essence of the transaction, and determines its involuntary character.
Although we reject the argument advanced by Midwest that the transfer from the executor to the beneficiary is voluntary, nevertheless, the appellant stands in the shoes of Carrie Riggs, and any transfers by appellant must be subject to the restrictions to which she was subject, i. e., appellant may not voluntarily transfer the stock without first offering it to Midwest.
Judgment reversed and cause remanded with directions to enter an order not inconsistent with this opinion.
ENOCH and STERNBERG, JJ., concur.