(No. 38518.—

HILMOND O. VOGEL, Appellee, *vs.* ANNA KOSTER MELISH, Appellant.

*Opinion filed Nov. 24, 1964.—Rehearing denied Jan. 19, 1965.*

George T. Spensley, of Chicago, for appellant.

Morgan, Halligan & Lanoff, of Chicago, (Samuel M. Lanoff, of counsel,) for appellee.

Mr. Justice Hershey delivered the opinion of the court:

Hilmond O. Vogel sought a declaratory judgment as to his rights under a 1954 stockholder's agreement between himself and Frank Koster, now deceased. The circuit court of Cook County ruled that the stockholder's agreement terminated upon the death of Frank Koster; the latter's widow and executrix, Anna Koster Melish, appealed to the Appellate Court. The Appellate Court affirmed and we granted leave to appeal to this court.

In the early part of 1954 there were outstanding 1150

shares in the Vogel Tool and Die Corporation. Hilmond O. Vogel owned 455 shares and Frank Koster owned a like amount. Vogel was a patent attorney while Koster was an inventor. Both were officers of the corporation. On March 3, 1954, Vogel and Koster entered into a written stockholder's agreement, which had been prepared by Vogel.

The agreement, after reciting the desire of the parties to enter a mutual agreement concerning rights and privileges of selling, transferring, conveying or otherwise disposing of their respective shares in the corporation, provided that each of the parties was to have personal custody of the other's shares and be responsible for their safekeeping. The agreement further provided that if either party desired to sell, transfer, assign, convey or otherwise dispose of all or part of his shares, he was to first offer such shares to the other. The offeree had sixty days within which to accept the offer; he was also given the right to purchase all or part of the shares offered. The agreement fixed the maximum price that could be asked for the shares offered; the price per share could not exceed 115 per cent of its book value computed on basis of the corporate assets but excluding liabilities. It was further agreed that offeree could pay for the purchased shares in full or pay in stipulated installments. However, in case of installment payments, the offeror was required to transfer shares only as they were paid for. The agreement concluded:

"6. The parties hereto further agree that the provisions of this agreement shall be binding upon and inuring to the benefit of the parties hereto and their respective administrators, executors, heirs and personal representatives."

Koster died June 8, 1958 and was survived by his widow and two sons. He bequeathed his 455 shares in the corporation to Berthold Joseph Hillebrand in trust for his widow for life and then his two sons. His will was admitted to probate and Anna Koster Melish was appointed executrix. Vogel on August 19, 1959, wrote the executrix

that he had transferred Koster's shares to her as executrix and would continue to hold them under terms of his contract with the deceased. The executrix subsequently sought to have some of the shares transferred to her in satisfaction of her widow's award; her petition is still pending in the probate court.

Vogel on August 10, 1960, filed this declaratory judgment action, naming the appellant, Berthold J. Hillebrand, Trustee, and the decedent's two minor sons, defendants. His petition prayed that the court determine whether the stockholder's agreement terminated with the death of Koster and in the alternative, determine, if the agreement remained in force, whether the testamentary transfer to the trustee gave him an option to purchase Koster's shares, whether the proposed transfer to the executrix in satisfaction of her widow's award gave him an option to purchase, and lastly when the agreement terminated. Vogel at the time had controlling interest of the corporation; in 1954 his 455 shares represented only 40 per cent of the outstanding shares.

The circuit court ruled that the 1954 stockholder's agreement terminated with Koster's death and that Vogel did not have an option to purchase Koster's shares by reason of his death and their transfer to the executrix. The decree directed the return of the shares to their respective owners. Anna Koster Melish, as executrix and individually, appealed the decree; the other defendants, the testamentary trustee and the minor sons of Koster, did not join in the appeal. The Appellate Court affirmed on the premise that the stockholder's agreement was personal to the parties and terminated with the death of Koster. It construed the sixth paragraph as applying only if either of the parties during the lifetimes of both contracted to purchase shares pursuant to the stockholder's agreement.

Anna Koster Melish, the appellant here, argues that the stockholder's agreement specifically provides that it inures

to the benefit of the parties' personal representatives and heirs; that if there is any ambiguity as to whether the entire, or only part of, the agreement inures to the benefit of the personal representatives and heirs, it should be construed against the author of the agreement, Vogel, and that the contract remains valid for the life of the corporation. Vogel on the other hand, contends that restraints on alienation are strictly construed and the stockholder's agreement contemplates a personal relationship between the parties which necessarily terminated with the death of either.

The 1954 stockholder's agreement has no termination date; appellant argues that it remains in force for the life of the corporation, while appellee argues that it terminates with the death of either of the parties, as perpetuity is the alternative to termination upon death. Neither construction is sound. The essence of the stockholder's agreement is the granting of reciprocal options on the other party's shares, or right of first refusal on those shares, as it is sometimes called. Where the duration of an offer is not specified, it is construed as outstanding for a reasonable time. (*Wrisley Co.* v. *Matheison Alkali Works,* 107 Ill. App. 379; 12 Am. Jur. 548; 12 I.L.P. Contracts, sec. 37.) In our opinion the 1954 stockholder's agreement remains in force for a reasonable time. See 1A Corbin on Contracts, sec. 266.

However, where a contract requires the continued existence of a particular person or thing for its performance, there is always an implied condition that death or destruction of that person or thing excuses further performance. (*Martin Emerich Outfitting Co.* v. *Siegel, Cooper & Co.* 237 Ill. 610; *Heimburger* v. *Holtapp,* 206 Ill. App. 602.) The Appellate Court concluded that the stockholder's agreement was personal to the parties and neither party was required to accept performance by strangers to the agreement. We agree with that determination.

The stockholder's agreement is a restraint on the alienation of the parties' shares of Vogel Tool and Die Corpora-

tion and consequently is to be strictly construed. (Fletcher, Cyclopedia of Corporations, sec. 5483; 18 C.J.S. 921.) The occurrences giving rise to the option to purchase are *inter vivos* transfers, the agreement reciting "sell, transfer, assign, convey or otherwise dispose of;" there is no express restriction on intestate or testamentary disposition, and under the rule of strict construction, none can be implied. In view of the detail of the stockholder's agreement, it is unreasonable to assume that the parties intended it to survive the death of either of them and to be susceptible to performance by their heirs or devisees when no provision for that contingency is made in the agreement, other than the vague and general terms of paragraph 6.

In the case of an election to purchase under the stockholder's agreement the offeree has the option of immediate payment or payment by installments. We also believe that it is unreasonable to assume the parties intended the alternate provision on credit to be available to their heirs or devisees. A Massachusetts case, *Browne v. Fairhall,* 213 Mass. 290, 100 N.E. 556, is factually similar to this case; there as here the contract to sell corporate shares had a provision that it was binding upon and inured to the benefit of the parties' respective heirs, executors and administrators. However, payment for the shares was to be in cash and notes of the purchaser for the balance, which provision the Massachusetts court held to be personal in nature and excused further performance upon death of the purchaser.

The stockholder's agreement also provides that the parties shall have "personal custody" of the other's shares and "assume all liability for the safekeeping of said certificates", which provision likewise evinces an intention that the agreement was capable of performance only by the parties themselves.

There appears to be only one reported case involving the question whether a stockholder's agreement of this nature survives the death of one of the parties in the ab-

sence of a provision to that effect. *Storer* v. *Ripley,* 178 N.Y.S. 2d 7, 12 Misc. 2d 662, involved construction of a stockholder's agreement which contained the following provision: "The undersigned (Storer and Ripley) agree that the stock interest of the parties shall not be sold, signed (sic) transferred or hypothecated unless it is first offered to the other at the purchase price or book value, whichever is the greater, payment to be made in 90 days." Ripley died and Storer claimed the right to purchase his shares. The court ruled that the agreement was personal to the parties and terminated with Ripley's death.

Appellant principally relies on the sixth paragraph of the stockholder's agreement that it is binding upon and inures to the benefit of the parties' personal representatives and heirs. This provision, she argues, evinces an intention that the entire agreement survives death of the parties. This provision is generally declaratory of the law. Unless a contract is personal in nature it usually survives the death of the parties. (12 Am. Jur. 949; 12 I.L.P. Contracts, sec. 384.) Nor does the existence of that provision in a contract requiring personal duties necessarily negate the implied condition that such a contract terminates upon death of a party. (*Aldrich* v. *Aldrich,* 260 Ill. App. 333; *Browne* v. *Fairhall,* 213 Mass. 290, 100 N.E. 556; 12 Am. Jur. 950.) In the *Aldrich* case the parties involved agreed to arbitrate a dispute. The agreement contained a provision that it was binding on the parties' heirs, executors and administrators. One of the parties died before the arbitrator rendered his decision and the court held the agreement to arbitrate terminated upon his death notwithstanding the provision that the agreement bound the parties' heirs and personal representatives. See our discussion of the *Browne* case above. We again agree with the Appellate Court that the sixth paragraph of the stockholder's agreement, in view of the personal character of the agreement, does not negate the implied condition that death of either party ex-

cuses the survivor from further performance and is properly construed as applying only where the parties during their lifetimes contract for the sale of shares pursuant to the agreement.

The decision of the circuit court of Cook County that the stockholder's agreement terminated with the death of Koster is correct and the judgment of the Appellate Court affirming it must be affirmed.

*Judgment affirmed.*