R. H. TROOP, Plaintiff-Appellant, *v.* E. D. EBERHARDT, Defendant-Appellee.

(No. 71-100;

Fifth District—November 14, 1972.

Burnside, Dees and Johnston, of Vandalia, for appellant.

Meyer and Meyer, and Robert F. Smith, both of Greenville, for appellee.

Mr. JUSTICE CREBS delivered the opinion of the court:

The appellant, R. H. Troop, who was the operator of certain oil wells, filed an action in the Circuit Court of Bond County seeking a judgment against appellee E. D. Eberhardt, the assignee of overriding royalty interests in said wells, for a portion of the expenses of operating the wells.

The trial court entered judgment for the defendant and plaintiff has appealed.

The facts are largely undisputed. It appears from the pleadings and evidence that in 1954 and 1955 one DeWitt T. Brown acquired by assignment certain overriding royalties in the oil wells. Plaintiff and one Arthur Larsen were the lessees and owners of the working interest of these wells. The overriding interests were for various fractional amounts and each provided that the overriding interest assigned to Brown were to be "free and clear into the tanks". In 1961 plaintiff and Brown entered into an agreement reciting that the parties to the agreement had a common interest in certain oil wells and that a misunderstanding had arisen as to the cost of operation.. Brown agreed to pay a certain sum for the cost of operating the wells to January 1, 1961 and agreed to pay Troop $55 per month commencing January 1, 1961 for his proportionate share of the pumpers' salary of certain named wells and agreed to pay one-third of the cost of the electricity on each of the named wells. The original assignments of the overriding interest to Brown were recorded but the agreement as to expenses was not. In January, 1964, Brown assigned to the defendant Eberhardt all interest that Brown had in certain oil leases, including those involved in this litigation. Brown reserved all royalties received during his lifetime and the assignment specified that it was the intention that defendant was to receive the benefit and income only after the death of Brown. This assignment was recorded in January, 1964. Following the execution of the expense agreement in 1961, plaintiff billed Brown monthly for the expenses and Brown paid the expenses as provided in the agreement until his death in 1965. Following Brown's death plaintiff billed the defendant monthly for these expenses apparently on the assumption that defendant had inherited the overriding royalties interest from Brown. The defendant failed to pay any of the monthly charges and this action was brought to recover the expenses provided for in the 1961 agreement.

The only evidence offered by plaintiff was the 1961 expense agreement between plaintiff and Brown; certain exhibits offered to prove the authenticity of Brown's signature; and a bookkeeper's summary of the monthly charges. At this point after plaintiff rested, there was nothing in the record to connect the defendant Eberhartd in any way with the agreement and if the defendant had not offered any evidence, it is clear that the court would have had no alternative but to have entered judgment for defendant. However, defendant offered in evidence the assignment to him. Plaintiff contended in the trial court and argues here that since Eberhardt received the benefit of the assignment he must also assume the burden of paying his proportionate share of the expenses. The defendant

contends that he is a *bona fide* purchaser for value without notice of the 1961 expense agreement and as such is protected both at common law and under the provisions of Ill. Rev. Stat. 1963, ch. 30, sec. 29. This argument has led the parties to devote a considerable portion of their briefs to the question of the burden of proof on the issue of whether a party is a *bona fide* purchaser for value and cases are cited distinguishing actions at law and suits in equity. In our opinion the arguments of the parties fail to meet the decisive issue.

The 1961 expense agreement was not, and did not purport to be an amendment of or an addendum to the recorded assignment of overriding royalty interests to Brown. Although Troop was one of the original lessees and one of the owners of the working interest in the wells, he did not execute the 1961 agreement in that capacity but only as the operator of the wells, and the other owner of the working interest, Larsen, was not a party to the 1961 agreement. The agreement was independent of the original assignment of the royalty interest exactly as it would have been had Troop been merely a salaried operator of the wells instead of an owner of the portion of the working interest. We need not speculate as to why Brown agreed to pay expenses where is original royalty interest was "free and clear into the tanks". He elected to do so and, between him and Troop, his agreement was binding; however it was of such a nature that it ceased on his death. (*Cf. Vogel v. Melish*, 31 Ill.2d 620.) If the wells could not be operated profitably without a contribution from defendant following Brown's death, the operator could shut down the wells or negotiate with him for a share of the expenses. We perceive no legal basis for imposing expenses upon the assignee where the agreement for expenses was a separate and independent agreement between the assignor and the operator.

The judgment of the trial court denying recovery of the expenses following Brown's death was correct and the judgment of the Circuit Court of Bond County is therefore affirmed.

Judgment affirmed.

EBERSPACHER, P. J., and JONES, J., concur.